**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                              :

JAMES H. FISCHER,               :

                            :

                  Plaintiff,     :       17-CV-10094 (PAE) (OTW)

                            :

                -against-       :       **REPORT & RECOMMENDATION**

                            :

BRUSHY MOUNTAIN BEE FARM, INC., et al.,  :

                            :

                  Defendants.    :

-----------------------------------------------------------x

ONA T. WANG, United States Magistrate Judge:

**To the Honorable Paul A. Engelmayer, United States District Judge:**

*Pro se* Plaintiff James H. Fischer brought this action, primarily alleging copyright
infringement, trademark infringement, and violations of the Digital Millennium Copyright Act,
17 U.S.C. § 1202 *et seq*., against Defendant Brushy Mountain Bee Farm, Inc., a retailer of
beekeeping supplies, and related individual and corporate Defendants. Plaintiff is the inventor
of Fischer's Bee-Quick, a substance that is used in beekeeping to remove bees from honey
supers without a harsh chemical smell.[1] Defendant Brushy Mountain Bee Farm, Inc. sold Bee-
Quick to its mail-order and online customers until 2011, when the relationship between Plaintiff
and Brushy Mountain Bee Farm, Inc. terminated. Plaintiff alleges that after the termination of
the relationship, Defendants used Plaintiff's intellectual property, including his advertising text
and product logo, to deceive consumers into purchasing a "knock-off" of his product called

---

[1] *See Jason Chrisman*, Removing Honey Supers With Fischer's Bee Quick, YouTube (Oct. 24, 2014),
https://www.youtube.com/watch?v=gVBSfbjlcM4.

"Natural Honey Harvester." Plaintiff had previously brought two actions in this district against certain of the named defendants in this action, alleging the same primary conduct. Both of those actions were dismissed in their entirety after defendants moved for summary judgment.

Before me for Report and Recommendation is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF 38). Defendants assert that Plaintiff's Complaint should be dismissed in its entirety under principles of *res judicata* and collateral estoppel or, in the alternative, for failure to state a claim upon which relief can be granted in accordance with Fed. R. Civ. P. 12(b)(6). For the reasons that follow, I recommend that Defendants' Motion to Dismiss be **GRANTED**.

## I.      Background

### A.      Facts[2]

#### 1.      The Parties

*Pro se* Plaintiff James H. Fischer is the inventor of "Bee-Quick®," a "honey harvesting aid for beekeepers" that they can use as a replacement for butyric anhydride, which is highly toxic and foul-smelling. (Complaint ("Compl.") ¶ 23, ECF 1). Plaintiff promotes the product as a "good, safe, non-toxic, not foul-smelling" substance that beekeepers can use with their honey and bees. (*Id.* ¶ 32). Defendant Brushy Mountain Bee Farm, Inc. ("Brushy Mountain"), a

---

[2] The following facts are drawn from the Complaint and its exhibits and attachments. (ECF 1). "In assessing the legal sufficiency of [a complaint], [a court] must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). The Court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint relies heavily.'" *Id.* (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (internal quotations omitted)).

company based in North Carolina, sells beekeeping products through its catalog and website. (*Id.* ¶¶ 27–29). Brushy Mountain sold Plaintiff's product, Bee-Quick, from 2002 until at least February 7, 2011. (*Id.* ¶ 28). Defendants Stephen T. Forrest, Jr., Sandra F. Forrest, and Shane R. Gebauer were, respectively, President, "Secretary/Treasurer," and General Manager of Brushy Mountain until September 2014.[3] (*Id.* ¶¶ 7–9). Stephen and Sandra Forrest were also both principal shareholders of Brushy Mountain until September 2014. (*Id.* ¶¶ 7–8). Shane Gebauer was allegedly an undisclosed 15% shareholder of Brushy Mountain until September 2014, when he became President. (*Id.* ¶ 9).

Defendant Hadley Capital, a company based in Illinois, purchased Brushy Mountain in September 2014. (*Id.* ¶ 12). Defendant BMBF Holdings, Inc. ("BMBF") is allegedly a "Delaware shell" for Hadley Capital, with "86% of [its] shares retained by Hadley [Capital], 10% by Mr. Gebauer, and 4% by a non-party." (*Id.* ¶ 14). Defendant Garden Trends, Inc. ("Garden Trends"), a company based in New York doing business as "Harris Seeds" is allegedly owned by non-party Byram Dickes and is a member of Hadley Capital's "family of companies."[4] (*Id.* ¶ 13). Garden Trends allegedly owns 10% of BMBF, which Plaintiff counts as part of Hadley Capital's 86% ownership of BMBF. (*Id.*) Although Plaintiff never clearly asserts who is legally controlling Brushy Mountain after September 2014, the implication in his Complaint is that BMBF completely owns Brushy Mountain, and thus Hadley Capital "owns and runs" Brushy Mountain

---

[3] As will be discussed, *infra*, Defendants Stephen Forrest, Sandra Forrest, Shane Gebauer, and Brushy Mountain were named defendants in the two prior actions brought by Plaintiff.
[4] It is unclear from Plaintiff's Complaint exactly how Garden Trends is owned by Hadley Capital, beyond a conclusory allegation that Hadley Capital has a "controlling interest" in Garden Trends. (Compl. ¶ 12).

through its controlling interest in BMBF. (*Id.* ¶ 15; *see* Defs.' Mem. of Law at 13 n.2 ("Fischer was notified BMBF holdings owns 100% of the shares of outstanding stock of Brushy Mountain . . . .")).

Defendant Scott B. Dickes was allegedly Brushy Mountain's "undisclosed Secretary/Treasurer" until September 2014, when "he (and/or his father)" became the "the new majority owner of Brushy via direct ownership and via entities he owns/controls." (Compl. ¶ 10). Scott Dickes' father is non-party Byram Dickes, who, as discussed above, allegedly owns Defendant Garden Trends. (*Id.* ¶ 13). Defendant Richard Clayton Brock has allegedly been Brushy Mountain's "undisclosed Vice President" since September 2014 and is allegedly an owner of Brushy Mountain through his "partnership/management" of Hadley Capital. (*Id.* ¶ 11).

### 2.    The Bee-Quick Mark, Four Phrases, Product Logo, and Product Label

In late 1999, Plaintiff began using the "Bee-Quick" mark in commerce. He registered the mark with the U.S. Trademark Office on December 11, 2001. (Compl. ¶¶ 35–36). Fischer also created a database of his "individual creative unpublished works" and displayed these works on his website in 2000, accompanied by a copyright notice. (Compl. ¶ 45). Among these "individual creative" works are the following four phrases, which Plaintiff used in connection with the sale of Bee-Quick on his website:

> 1. "Are you tired of your spouse making you sleep in the garage after using Butyric Anhydride?"
> 2. "Are you tired of using hazardous products on the bees you love?"
> 3. "Fischer's Bee-Quick is a safe, gentle, and pleasant way to harvest your honey."
> 4. "A Natural, Non-Toxic Blend of Oils and Herbal Extracts."

(*Id.* ¶¶ 46–48) (the "Four Phrases").

4

Plaintiff used the Four Phrases to create printed advertisements, brochures, and other materials. (*See id.*) Plaintiff also created both an original logo for Bee-Quick and a product label. (*Id.*; *see id*. Ex. 5). As further discussed below, Plaintiff alleges that he licensed his Bee-Quick logo, label, and the Four Phrases to the Defendants beginning in 2002, so that they could sell Bee-Quick. (Compl. ¶ 29).

### 3. The Fischer—Brushy Mountain Relationship

As previously discussed, in 2002, Brushy Mountain began selling Bee-Quick as an "Authorized Dealer." (*Id.* ¶¶ 28, 49, 51). Beginning in 2002, Brushy Mountain used the following words (or similar ones) to promote Bee-Quick in advertisements, including in its print catalog:

> Fischer's Bee Quick™
> This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and Honey Robber® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go® or Honey Robber®? Are you tired of using a hazardous product on the bees you love? Then this is the product for you!

(*Id.* ¶ 53; *see id.* Ex. 6).

Plaintiff would also send Brushy Mountain "camera-ready art" for it to use in its print catalog and website. (*Id.* ¶ 57). Plaintiff authorized Brushy Mountain to use the advertising text and images in its print catalog and website because it was a Bee-Quick authorized dealer. (*See id.* ¶ 51).

In December 2010, Brushy Mountain emailed Plaintiff and informed him that they would no longer carry Bee-Quick. (*Id.* ¶ 59). Brushy Mountain allegedly stopped selling Bee-Quick to customers in February 2011. (*Id.* ¶ 28). In March 2011, Plaintiff saw Brushy Mountain's

2011 mail-order catalog, which contained the following text, advertising a product called

"Natural Honey Harvester":

> For years we have promoted the use of a natural product to harvest honey but an
> unreliable supply of such a product has forced us to come out with our own. This
> 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go®
> and it smells good! Natural Honey Harvester™ is a safe, gentle, and pleasant way
> to harvest your honey. Are you tired of your spouse making you sleep in the garage
> after using Bee Go®? Are you tired of using hazardous products on the bees you
> love? Then this is the product for you!

> (*Id.* ¶ 63).

Brushy Mountain also used this advertising text on their website in 2011. (*Id.*) In April 2011,

Plaintiff sent a "recission [*sic*] letter" to Defendants, prohibiting them from any "further use" of

Plaintiff's intellectual property, which, Plaintiff asserts, is appropriated in the advertising text

for Natural Honey Harvester. (*Id.* ¶¶ 63, 65). Defendants "sent a non-responsive reply" to

Plaintiff's letter and continued to use the same advertising text in their "2012 catalog and

website, and in subsequent years after." (*Id.* ¶¶ 66–68). Plaintiff alleged in his communications

with Brushy Mountain that Brushy Mountain "infringed upon Plaintiff's copyrights in each of his

copyrighted works," that is, the Four Phrases, but did not allege that Brushy Mountain infringed

on his Bee-Quick trademark. (*Id.* ¶ 71).

### 4.    Plaintiff's Claims

The heart of Plaintiff's Complaint is that Defendants willfully "infringed upon Plaintiff's

copyrights in each of his copyrighted works, by unlawfully copying, displaying, and distributing

Plaintiff's copyrighted works in their 2012 and subsequent catalogs and websites, after

termination of their rights." (Compl. ¶ 71). Plaintiff alleged that these "copyrighted works" are

6

the Four Phrases, the Bee-Quick product logo, and the Bee-Quick product label. (*Id.* ¶¶ 74–86).

Defendants allegedly infringed on Plaintiff's copyrighted works "to fraudulently attract and

divert to themselves online, mail, and telephone orders from customers wanting to buy

Plaintiff's product by giving the false impression that Defendants were still selling or

manufacturing Plaintiff's product." (*Id.* ¶ 72). Fundamentally, Plaintiff alleges that Defendants

made a Bee-Quick "knock-off" and then used his advertising copy to deceive consumers into

believing that they were purchasing Bee-Quick, not Defendants' similar product. (*Id.* ¶¶ 4, 71,

72). Plaintiff asserts that when Brushy Mountain was selling his product, Bee-Quick, they were

permitted to use his "intellectual property," but when they stopped selling Bee-Quick and

began to sell Natural Honey Harvester, they infringed on his copyrights.[5] (*See id.* ¶¶ 63, 65, 71–

72).

Plaintiff brings 16 claims against all Defendants, which can be broken up into four

discrete categories: (1) copyright; (2) DMCA; (3) trademark; and (4) state law. His first six claims

(1–6) are for copyright infringement, alleging that Defendants infringed Plaintiff's exclusive

rights to the Four Phrases, the Bee-Quick logo, and the product label. (*Id.* ¶¶ 74–86). His next

three claims (7–9) allege violations of the "copyright management information" (CMI)

provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 1202. (*Id.* ¶¶ 90–93). He asserts,

without much clarity as to what the CMI is, that Defendants removed CMI from his photographs

and other works, (*id.* ¶ 91), that Defendants added their company name and website address to

---

[5] However, other than identifying the similar advertising copy in the text for Natural Honey Harvester, Plaintiff does not identify any other "intellectual property" relating to Bee-Quick that Defendants allegedly reproduced after they stopped selling Bee-Quick and began selling Natural Honey Harvester.

the edges of their print catalog pages, (*id.* ¶ 93), that Defendants added a "Brushy Mountain" watermark to Plaintiff's label and logo on their website, (*id.* ¶ 94), and that Defendants "distributed and displayed" the removed and "false" CMI. (*Id.* ¶ 96). His next three claims (10–12) allege trademark infringement, false designation of origin, and trademark counterfeiting, all in violation of the Lanham Act, 15 U.S.C. §§ 1114 & 1125. (*Id.* ¶¶ 109–130). Plaintiff asserts that Defendants either used Plaintiff's Bee-Quick mark without authorization after his April 2011 letter (*id.* ¶¶ 99–100), or that Defendants "counterfeited" the mark by calling their product "Natural Honey Harvester." (*Id.* ¶¶ 124 –130). Plaintiff's final four claims allege violations of New York law, including New York General Business Law § 349 (deceptive practices), New York General Business Law § 360-*l* (anti-dilution), common law trademark infringement, and common law unfair competition. (*Id.* ¶¶ 131–153).

    **B.**    **Procedural History**

        **1.**    **Plaintiff's Two Previous Actions in the Southern District of New York**

This action is designated as related to two previous lawsuits filed in this district by Plaintiff against some of the same defendants in this action: *Fischer v. Forrest, et al.*, 14-CV-1304 (S.D.N.Y filed Feb. 27, 2014) and *Fischer v. Forrest, et al.,* 14-CV-1307 (S.D.N.Y. filed Feb. 27, 2014). The two matters were litigated in tandem. *See Fischer v. Forrest*, 286 F. Supp. 3d 590, 596 n.2 (S.D.N.Y. 2018) (Engelmayer, J.) ("*Fischer I*"). [6] In *Fischer I*, Plaintiff, proceeding *pro se*,

---

[6] On February 27, 2014, Plaintiff filed two similar suits against the *Fischer I* defendants. *Fischer I*, 286 F. Supp. 3d at 596 n.2. The complaints in the two suits only differed materially in that one pleaded claims for direct copyright infringement while the other pleaded claims for secondary copyright infringement. *See id.* After the court stated that it was inclined to consolidate the cases, Plaintiff objected, arguing that "combining the suits could impair his

first brought an action against Defendants Stephen and Sandra Forrest, [7] making similar allegations as he does here. *Fischer I*, 286 F. Supp. 3d at 600. On July 9, 2014, Defendants Stephen and Sandra Forrest moved to dismiss Plaintiff's complaints, and were denied. *Id.* On February 3, 2015, Plaintiff filed a second amended complaint in both actions and added Shane Gebauer as a defendant. (ECF 50, 14-CV-1304). On December 28, 2015, Plaintiff, who had by then retained counsel, filed a third amended complaint in each action and added Brushy Mountain as a defendant. *See Fischer I*, 286 F. Supp. 3d at 600. The third amended complaint filed in 14-CV-1304 alleges five copyright infringement claims (*Fischer I* Claims 1–5), five DMCA claims (*Fischer I* Claims 6–10), four claims of trademark counterfeiting (*Fischer I* Claims 11–14), one claim for right of publicity under federal law (*Fischer I* Claim 15), and six state law claims (*Fischer I* Claims 16–21), including unfair business practices (*Fischer I* Claim 19). (ECF 89, 14-CV-1304 ("*Fischer I* TAC")).[8] The overlapping and differing claims are summarized in the charts below:

| Overlapping Claims | |
|---|---|
| *Fischer I* TAC | Complaint (ECF 1) |
| Copyright Infringement (Claims 1–5)<br>1. Infringement of phrase "Are you tired of your spouse making you sleep in the garage?"<br>2. Infringement of phrase "Are you tired of using a hazardous product on the bees you love?" | Copyright Infringement (Claims 1–6)<br>1. Infringement of phrase "Are you tired of your spouse making you sleep in the garage?"<br>2. Infringement of phrase "Are you tired of using a hazardous product on the bees you love?" |

---

ability to recover separate awards for direct and contributory infringement." *Id.* The court declined to consolidate the cases but ordered that they be "dealt with in concert." *Id.*

[7] Both actions first named only Stephen Forrest as a defendant. Sandra Forrest was added as a defendant in both action when Plaintiff filed an amended complaint. (*See* ECF 23, 14-CV-1304).

[8] The third amended complaint in Plaintiff's other action, 14-CV-1307, contains eight claims, all of which overlap with the *Fischer I* TAC, including copyright infringement (claims 1-4) and DMCA claims (5–8).

| | |
|---|---|
| 3. Infringement of phrase "A safe, gentle, and pleasant way to harvest your honey."<br>4. Infringement of phrase "A natural, non-toxic blend of oils and herbal extracts."<br>5. Infringement of "product photo." | 3. Infringement of phrase "A safe, gentle, and pleasant way to harvest your honey."<br>4. Infringement of phrase "A natural, non-toxic blend of oils and herbal extracts."<br>5. Infringement of "product logo."<br>6. Infringement of "product label." |
| DMCA (Claims 6–10)<br>1. Removal of CMI for first phrase.<br>2. Removal of CMI for second phrase.<br>3. Removal of CMI for third phrase.<br>4. Removal of CMI for fourth phrase. | DMCA (Claims 7–9)<br>1. Removal of CMI for all four phrases.<br>2. Addition of false CMI.<br>3. "Distributing and Displaying" the "removed and false" CMI. |
| Trademark Counterfeiting (Claims 11–14)<br>1. Counterfeit use of "two photos" of Bee-Quick.<br>2. Counterfeit use of "a 3rd photo" of Bee-Quick.<br>3. Counterfeit use of Bee-Quick mark in defendants' URL.<br>4. Counterfeit use of Bee-Quick mark in "a 2nd" URL. | Trademark Counterfeiting (Claim 12)<br>1. Use of "spurious designations" that are "identical with, or substantially indistinguishable from, Plaintiff's trademarks." (no further factual allegations) |
| New York General Business Law § 349 (Claim 19)<br>1. Consumers are "deceived" by the sale of Natural Honey Harvester. | New York General Business Law § 349 (Claim 16)<br>1. Sale of Natural Honey Harvester is likely to cause "confusion, mistake, and deception." |

| Differing Claims | |
|---|---|
| *Fischer I* TAC | Complaint (ECF 1)<br>(No new facts pleaded) |
| Right of Publicity (Claims 15–17) | Trademark Infringement (Claim 10) |
| False Advertising (Claim 18) | False Designation of Origin (Claim 11) |
| Breach of Contract (Claim 20) | New York General Business Law § 360-*l* (Claim 14) |
| Unjust Enrichment (Claim 21) | Common Law Trademark Infringement (Claim 15) |
| | Common Law Unfair Competition (Claim 16) |

All the *Fischer I* defendants moved to dismiss the copyright, New York right of publicity, and trademark counterfeiting claims in the third amended complaints. (ECF 102, 14-CV-1304; *see* ECF 132 at 7, 14-CV-1304).

### 2. Dismissal of Plaintiff's Claims in the Prior Actions

On January 13, 2017, the Honorable Andrew J. Peck issued a Report and Recommendation, in which he recommended granting the defendants' motions to dismiss as to the trademark counterfeiting claim and right of publicity claim under New York law,[9] but to otherwise deny the motions. (*See* ECF 153 at 2, 14-CV-1304). On March 21, 2017, Judge Engelmayer adopted the Report and Recommendation in its entirety, over Plaintiff's objections. (ECF 153, 14-CV-1304; *see* ECF 137, 14-CV-1304). Judge Engelmayer held that, as to the trademark counterfeiting claim, "the name of the allegedly counterfeit product, 'Natural Honey Harvester,' is easily distinguished from Fischer's registered "Bee-Quick" mark, so as not to be fairly be called 'counterfeit.'" *Fischer v. Forrest*, 14-CV-1304 (PAE), 2017 WL 1063464, at *4 (S.D.N.Y. Mar. 21, 2017). As to the right of publicity claim, Judge Engelmayer held that the claim was untimely under New York's one-year statue of limitations for such claims, as Plaintiff alleged that the unlawful conduct occurred in March 2011.[10] *Id.* at *5.

On April 19, 2017, following document discovery and depositions, (*see* ECF 155 at 2, 14-CV-1304), the defendants moved for summary judgment on all the remaining claims in the

---

[9] Plaintiff alleged that the defendants used his name in URLs on their website in violation of the New York's right of publicity law. (*Fischer I* TAC ¶ 171).

[10] Judge Engelmayer further held that any alleged republication of Plaintiff's name, in violation of New York law, did not trigger a new limitations period, because the defendants took no new *actions*, they simply used Plaintiff's name "continuously" in the URLs on the Brushy Mountain website. *Fischer*, 2017 WL 1063464, at *5.

actions. (ECF 170, 14-CV-1304). On July 14, 2017, Judge Peck issued a Report and

Recommendation in which he recommended granting the motions in their entirety. *Fischer v.*

*Forrest*, 14-CV-1304 (PAE), 2017 WL 2992663, at *1 (S.D.N.Y. July 14, 2017). As is relevant to

this matter, Judge Peck held that Plaintiff could not obtain statutory damages for his copyright

infringement claims —his elected damages remedy—because his copyright registration for the

Four Phrases post-dated defendants' first infringing acts.[11] *See id.* at *11. Judge Peck also held

that Plaintiff had not established a DMCA claim because: (1) Plaintiff presented no evidence

that defendants removed CMI or metadata from Plaintiff's Bee-Quick photo; and (2) Plaintiff

did not show that any of the Four Phrases contain CMI. *See id.* at *16–19. On August 11, 2017,

Plaintiff objected to Judge Peck's Report & Recommendation.

While Judge Engelmayer was reviewing Judge Peck's Report & Recommendation and

Plaintiff's objections, Plaintiff, on December 22, 2017, filed this action *pro se*. (ECF 1). It is not

clear from the record if Plaintiff's counsel was aware of the filing of this action. On February 16,

2018, over Plaintiff's objections, Judge Engelmayer adopted the Report and Recommendation

in its entirety, dismissing all of Plaintiff's remaining claims and closing the cases. *Fischer I*, 286 F.

Supp. 3d at 596. The Clerk of Court entered judgments in the actions on the same day. (ECF

198, 14-CV-1304).

On March 12, 2018, Plaintiff filed documents in *Fischer I* in opposition to the

defendants' requests for costs and legal fees. (ECF 201, 14-CV-1304). According to Plaintiff's

---

[11] On February 7, 2011, Plaintiff filed a copyright registration application for the "text and images of [the] Bee-Quick.com website," and listed 2000 as the "Year of Completion." *Fischer*, 2017 WL 2992663, at *4. Plaintiff does not plead this fact in his instant Complaint.

counsel, Plaintiff did so without having his counsel review the documents, and Plaintiff then informed his counsel that he wished to proceed *pro se*. (ECF 205, 14-CV-1304).[12] Judge Engelmayer granted Plaintiff's counsel's motion to withdraw on April 11, 2018. (ECF 213, 14-CV-1304). Plaintiff moved for reconsideration of Judge Engelmayer's Order adopting Judge Peck's Report and Recommendation and was denied on August 29, 2018. (ECF 224, 14-CV-1304). On October 2, 2018, Plaintiff filed a notice of appeal from both the denial of reconsideration and the adoption of the Report and Recommendation. (ECF 230, 14-CV-1304). The appeal is currently pending.

### 3.    The Current Action

On December 22, 2017, Plaintiff filed his Complaint in this action. (ECF 1). On May 2, 2018, Defendants filed their Motion to Dismiss, (ECF 38) and supporting Memorandum of Law. (ECF 39). Plaintiff filed his Memorandum of Law in Opposition in May 21, 2018, (ECF 43), and the motion was fully briefed on May 29, 2018. (ECF 44).

## II.    Discussion

### A.    *Pro Se* Complaints

As an initial matter, a "*pro se* complaint . . . [is] interpret [ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'"*Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); *see Weixel v.*

---

[12] As previously discussed, Plaintiff filed his *pro se* Complaint in this action on December 22, 2017, while he was still purportedly represented by counsel in the *Fischer I* action.

13

*Bd. of Educ. of New York*, 287 F.3d 138, 145–46 (2d Cir. 2002) ("When considering motions to dismiss a *pro se* complaint such as this, 'courts must construe [the complaint] broadly . . . .'" (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although *pro se* filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a *pro se* complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (internal citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" *Whitfield v. O'Connell*, 9-CV-1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even for purposes of a *pro se* complaint. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B.**      **Applicable Legal Standards**

**1.**      ***Res Judicata* and Collateral Estoppel**

A court may consider a *res judicata* or collateral estoppel defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials that can be judicially noticed. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014); *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 499–500 (S.D.N.Y. 2007) (Batts, J.); *O'Callaghan v. City of New York*, 16-CV-1139 (ER), 2016 WL 7177509, at *4 (S.D.N.Y. Dec. 8, 2016) (Ramos, J.). A court may take judicial notice of its own records. *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)

("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the [*res judicata*] defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."); *see also Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009) (Leisure, J.) ("Dismissal based on *res judicata* or collateral estoppel is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred.").

Federal law applies "in determining the preclusive effect of a federal judgment and New York law [applies] in determining the preclusive effect of a New York State court judgment." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Thus, federal law applies here.

### a) *Res Judicata*

Under the doctrine of *res judicata* or claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were **or could have been** raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (emphasis in original) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Brown v. Felsen*, 442 U.S. 127, 131 (1979); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992*); see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) ("Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'").

*Res judicata* applies where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000); *Robinson v. Purcell Constr. Corp.*, 647 F. App'x 29, 30 (2d Cir. 2016) (summary order).

As explained by the Second Circuit in *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90-91 (2d Cir. 1997):

> It must first be determined that the second suit involves the same "claim"—or "nucleus of operative fact"—as the first suit. *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, [and] whether the same evidence is needed to support both claims." *National Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983); *see also Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991). To ascertain whether two actions spring from the same "transaction" or "claim," we look to whether the underlying facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(b); *see also Apparel Art Int'l*, 48 F.3d at 584.

*See also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("[T]he first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit."); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 638 (2d Cir. 1989) (*res judicata* applied where it was "readily apparent" that the new complaint alleged legal theories and facts that "were all part of the same cause of action and arose from a 'single core of operative facts'"); *Meagher ex rel. Pension Plan of Cement & Concrete Workers Dist. Council Pension Fund v. Bd. of Trs. of Pension Plan of Cement & Concrete Workers Dist.*

*Pension Fund*, 921 F. Supp. 161, 167 (S.D.N.Y. 1995) (Lowe, J.) ("Regardless of the legal theory a plaintiff advances, when the factual predicate underlying claims in successive actions are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*."), *aff'd*, 79 F.3d 256 (2d Cir. 1996).

The Court of Appeals has held that "literal privity is not a requirement for *res judicata* to apply . . . . Instead, a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d at 285 (citations omitted); *see also Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996) (privity is used "to describe various relationships between litigants that would not have come within the traditional definition of that term"); *Sweeper v. Tavera*, 08-CV-6372 (HB), 2009 WL 2999702, at *4 (S.D.N.Y. Sept. 21, 2009) (Baer, J.) ("Privity may also be found where the claims in the prior action and the subsequent action are identical, the same witnesses, facts and legal theories are involved, and the first action did not involve any defense unique to those parties."). Thus, employees in supervisory roles have been found to be in privity with their employers for the purposes of the *res judicata* analysis. *See Weinberger v. Tucker*, 510 F.3d 486, 492–93 (4th Cir. 2007) ("Courts have held that the attorney-client relationship itself establishes privity."); *accord Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y. 2014) (Failla, J.); *see also Powers v. City of New York*, 04-CV-02246 (NGG), 2007 WL 1026407, at *5 & n.1 (E.D.N.Y. Mar. 30, 2007) (finding that defendants who were unnamed in the prior litigation but who worked for corporate defendant in supervisory roles were parties in privity for purposes of *res judicata* analysis).

17

### b) Collateral Estoppel

"The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003); *see also Flaherty v. Lang*, 199 F.3d at 612. "Collateral estoppel applies only against a party to a previous adjudication and that party's 'privies.'" *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Intl. B.V. v. Schreiber*, 327 F.3d 173, 184 (2d Cir. 2003). "Under federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Purdy v. Zeldes*, 337 F.3d at 258 (footnotes and citation omitted); *see also Harrison v. Lutheran Med. Ctr.*, 468 F. App'x 33, 35 (2d Cir. 2012) (summary order); *Marvel Characters, Inc. v. Simon*, 310 F.3d at 288–89, (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998))*; Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d at 91; *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

### 2. Rule 12(b)(6)

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all non-conclusory factual allegations in the plaintiff's complaint, together with the contents of any documents integral to the complaint and any matters of which the Court may take judicial notice, and draw all reasonable inferences in favor of the plaintiff. *See Doe v.*

*Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Courts must not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

To survive a motion to dismiss made under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, the non-conclusory factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## C. Analysis

### 1. *Res Judicata*

The doctrine of *res judicata* bars all of Plaintiff's claims because Plaintiff litigated those claims in *Fischer I* and there was a final judgment on the merits. As an initial matter, these claims are based on the same series of transactions as in *Fischer I*. In both cases, Plaintiff alleges that after Brushy Mountain stopped selling Bee-Quick, it made a Bee-Quick "knock-off" (Natural

Honey Harvester) and then used his advertising copy (*i.e.*, the Four Phrases) to deceive consumers into believing that they were purchasing Bee-Quick. (Compl. ¶¶ 30, 63; *see Fischer I*, 286 F. Supp. 3d at 598–600). Although Plaintiff does allege that Defendants continued to use his intellectual property through 2017, (Compl. ¶ 29), he alleges no facts to suggest that there was a *new* misappropriation of his "intellectual property" that post-dates the *Fischer I* TAC.

a) <u>**Prior Adjudication on the Merits**</u>

As to the first *res judicata* factor, there was a final judgment on the merits in *Fischer I* concerning Plaintiff's claims that Defendants misappropriated Plaintiff's copyrighted works, removed or falsified CMI, and infringed on his trademarks, as it is "well-established that summary judgment is an adjudication on the merits for *res judicata* purposes." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010); *see Weston Funding Corp. v. Lafayette Towers, Inc.,* 550 F.2d 710, 712–15 (2d Cir. 1977); *Ranasinghe v. Kennell*, 16-CV-2170 (JMF), 2017 WL 384357, at *4 (S.D.N.Y. Jan. 25, 2017) (Furman, J.) ("It is long settled in this Court . . . that a summary judgment dismissal is considered a decision on the merits for res judicata purposes.").

b) <u>**Parties in Privity**</u>

As to the second factor, the previous actions involved parties in privity. The parties in *Fischer I* and this action are either the same—Plaintiff, Brushy Mountain, Steven and Sandra Forrest, and Gebauer—or are, as Plaintiff himself alleges, in privity with each other: BMBF, Hadley Capital, Scott Dickes, Richard Brock, and Garden Trends (collectively, the "New

Defendants").[13] (*See* Compl. ¶¶ 11–19). Privity requires that "the new defendant [have] a sufficiently close relationship to the original defendant to justify preclusion." *Cent. Hudson Gas & Elec. Corp.*, 56 F.3d at 368. Here, Plaintiff alleges that Defendant Brock is Brushy Mountain's Vice President, (Compl. ¶ 11), that Defendants Richard Brock and Scott Dickes are "each vicarious[ly] liable" for Brushy Mountain's acts, (*id.* ¶ 19), that Defendant Brushy Mountain is "a mere instrumentally or adjunct of BMBF" or is an "alter-ego or DBA" for BMBF, (*id.*), that Hadley Capital owns Brushy Mountain, (*id.* ¶ 15), that Garden Trends is "a Hadley-nominee on the BMBF Holdings board and Hadley's puppet," (*id.* ¶ 13), and that Garden Trends owns 10% of BMBF. (*Id.*) Further, Plaintiff alleges that the New Defendants became involved with Brushy Mountain in September 2014, over a year before he filed his third amended complaint in *Fischer I*. (ECF 89, 14-CV-1304). The interests of both Plaintiff and the non-*Fischer I* defendants "were adequately represented by another vested with the authority of representation" in *Fischer I*. *Monahan*, 214 F.3d at 285 (quoting *Alpert's Newspaper Delivery, Inc. v. The N.Y. Times*, 876 F.2d 266, 270 (2d Cir. 1989)).

### c)     Claims Asserted Were—or Could Have Been—Raised

As to the final factor, Plaintiff's claims against Defendants were raised and fully litigated in *Fischer I*. The fact that Plaintiff has repackaged his claims slightly and presented them in the guise of some new legal theories is immaterial,[14] as *res judicata* precludes not only those claims

---

[13] Plaintiff knew of Defendant Hadley Capital prior to filing the *Fischer I* TAC, because when he moved for leave to file the *Fischer I* TAC, he withdrew "on the record that aspect of his motions that [sought] to add Hadley Capital LLC and several 'John Doe' defendants . . . ." (ECF 86, 14-CV-1304).

[14] Plaintiff's repackaging includes expanding his copyright infringement claims from 5 claims to 6 claims, and his new theories include additional DMCA and trademark claims. He pleads no new facts to support these claims

21

that were raised in the prior action, but also those involving the same transaction or connected series of transactions that "could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *accord Cromwell v. Cty. of Sac*, 94 U.S. 351, 352 (1977). In the Second Circuit, the "requirement of 'identity of cause of action' does not mean that the claims alleged be identical . . . ." *Meagher*, 921 F. Supp. at 167 (*quoting Cullen v. Paine Webber Grp., Inc.*, 689 F. Supp. 269, 278 (S.D.N.Y. 1988)), *aff'd*, 79 F.3d 256 (2d Cir. 1996). The inquiry asks the Court to determine if the new complaint alleges legal theories and facts that "were all part of the same cause of action and arose from a 'single core of operative facts.'" *Norman*, 873 F.2d at 638.

Plaintiff's Complaint, besides being an almost *verbatim* recitation of the facts from the *Fischer I* TAC, alleges the same core acts and injuries arising from Defendants' print and online sales advertising: (1) that Defendants used his "intellectual property" (the Four Phrases, the Bee-Quick logo, and the product label); (2) that Defendants violated the DMCA by removing and/or falsifying CMI; and (3) that Defendants infringed his Bee-Quick trademark.[15] These core acts and injuries are predicated on the same facts that Plaintiff pleaded in *Fischer I*. In *Fischer I*, Plaintiff alleged that Brushy Mountain and the other *Fischer I* defendants initially had permission to use his intellectual property and trademark, and, after the dissolution of the

---

except the assertion that Defendants added their own company name and URL to the edges of their print catalog page. (Compl. ¶ 93). Plaintiff claims that doing so "knowing[ly] add[ed] false CMI to Plaintiff's copyrighted [w]orks." (*Id.*) This new fact does not support any true claim of a DMCA violation, as the website URL they added, "brushymountainbeefarm.com," is Brushy Mountain's own website. (*See id.*) Further, Plaintiff has not identified any instance where Defendants' CMI was actually attached to his copyrighted work.

[15] Plaintiff's four New York State law claims, while nominally different from those pleaded in *Fischer I* (except for his claim that Defendants violated General Business Law § 349), are all based on the same underlying conduct and actions as his federal claims.

business relationship, the defendants infringed on his "intellectual property" by using the Four Phrases, product logo, and product label[16] in their advertising for their own product, Natural Honey Harvester. *Fischer I*, 286 F. Supp. 3d at 598. Plaintiff also alleged in *Fischer I* that the defendants infringed his Bee-Quick trademark by naming their competing product "Natural Honey Harvester." *Fischer*, 2017 WL 2992663, at *19–20.[17]

### (1)    Plaintiff's Previously Alleged Claims Are Barred

The copyright claims in *Fischer I* (*Fischer I* Claims 1–5) are replicated in this action at claims 1–6; the first difference is that *Fischer I* combines allegations relating to the product logo and product label into one claim, while Plaintiff's Complaint here separates them into two claims. (*See* Compl. ¶¶ 74–86). The second difference between the *Fischer I* copyright claims and the claims in the action is the damages election: in *Fischer I*, Plaintiff specifically sought statutory damages in accordance with 17 U.S.C. § 504 and related provisions, (*Fischer I* TAC at 47 ¶ 5), whereas here, Plaintiff claims he is entitled to "damages, costs, and fees in an amount to be proven at trial." (Compl. ¶ 86). But the fact that Plaintiff now elects a different damages remedy—something he previously attempted to do in *Fischer I*, as will be discussed *infra*—does not allow him to avoid *res judicata*. Plaintiff could have previously pleaded, in the alternative, that he was entitled to actual damages for copyright infringement. *See Encyclopedia Brown*

---

[16] Plaintiff alleges that Defendants infringed his product logo and product label by displaying them on their website in 2011. (Compl. ¶ 64). This allegation is belied by Plaintiff's Exhibit 10, attached to his Complaint, which clearly shows the Natural Honey Harvester logo and label, not the Bee-Quick logo and label.

[17] Judge Peck determined that Plaintiff did not properly plead a trademark infringement claim in the *Fischer I* TAC because he instead brought a claim for trademark counterfeiting. *Fischer*, 2017 WL 2992663, at *19. ("[Plaintiff] may have intended to bring a trademark infringement claim against defendants, but his Third Amended Complaint, drafted and filed by counsel, specifically references defendants' use of 'counterfeit' mark.").

*Productions, Ltd. v. Home Box Office, Inc.*, 25 F. Supp. 2d 395, 399 n.4 (S.D.N.Y. 1998) (plaintiff may elect statutory damages or actual damages for copyright infringement). Thus, regardless of his damages remedy in this action, his copyright claims are barred by *res judicata* as they were both previously alleged and, as to damages, could have been alleged.

Like the copyright claims, the DMCA claims in *Fischer I* (*Fischer I* Claims 6–10) are combined into one claim here (claim 7). The trademark counterfeiting claims in *Fischer I* (*Fischer I* Claims 11–14) are also combined into one claim here (claim 12). Plaintiff's claim in *Fischer I* that the defendants violated General Business Law § 349 (*Fischer I* Claim 19) is repeated here, although in abbreviated manner (claim 16). All of these claims are based on the same facts alleged in *Fischer I*, using virtually identical language. (*See* Chart, *supra*, § B.1.) Because these are the same claims brought against the same defendants, or defendants in privity, *res judicata* precludes relitigation of these claims.

### (2)    Plaintiff's "Newly" Alleged Claims are Also Barred

As to the "new" claims in this action, which are claims 8 and 9 (use of false CMI in violation of the DMCA), claims 10 and 11 (trademark infringement and false designation of origin), claim 14 (New York General Business Law § 360-*l*), and claims 15 and 16 (New York common law claims), Plaintiff alleges no facts in support of these claims other than the facts previously alleged in *Fischer I*. Because Plaintiff is barred from relitigating issues that "could have been raised" in the previous action, *Flaherty*, 199 F.3d at 612, these "new" claims were, for the purposes of the *res judicata* analysis, raised and fully litigated in *Fischer I*. Further, to the

extent that these are "new" claims, there is no reason Plaintiff could not have raised them in *Fischer I*.

But most importantly, any "new" claims are barred here because they are "based on the same series of facts and events as the claims brought" in *Fischer I. Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 225 (S.D.N.Y. 2010); *see Sure–Snap Corp. v. State St. Bank and Trust Co.*, 948 F.2d 869, 873–75 (2d Cir. 1991) (new claims could have been brought in the prior action because "the same transaction, evidence, and factual issues [are] involved"); *Coalition For A Level Playing Field, L.L.C. v. Autozone, Inc.*, 737 F. Supp. 2d 194, 207–08 (S.D.N.Y. 2010) (new claims are "intertwined" with claims brought in a previous proceeding and "easily could have been brought as part of that action"); *Wang v. Paterson*, 07-CV- 2032 (LTS) (AJP), 2008 WL 5272736, at *7 (S.D.N.Y. Dec. 18, 2008) ("[A]s the instant claims arise out of the 'same transaction, occurrence or series of transactions or occurrences' as those in *Wang I*, Defendants named in their individual capacities in the instant case could have been joined in *Wang I* under Rule 20."); *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 149–52 (D. Conn. 2005) (new claims brought against defendants in privity with defendants in a prior suit could have been brought as part of the prior litigation because they are based on the same "transaction or occurrence"). Accordingly, *res judicata* precludes relitigation of these claims. *See, e.g.*, *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008).

### 2. Collateral Estoppel

The principles of collateral estoppel independently bar Plaintiff from relitigating *issues* that were previously adjudicated in *Fischer I*.

### (1)    Identical Issues Raised in Prior Proceeding

The first collateral estoppel factor, whether the issues are identical in both proceedings, is met here. As noted above, in both *Fischer I* and in his current Complaint, Plaintiff alleges that Defendants made a Bee-Quick "knock-off" (Natural Honey Harvester) and then used his advertising copy (*i.e.*, the Four Phrases) to deceive consumers into believing that they were purchasing Bee-Quick, rather than Natural Honey Harvester. (*Compare* Compl. ¶¶ 4, 71, 72, *with Fischer I* TAC ¶¶ 5, 64, 73). The underlying issue in both complaints is that Plaintiff believes that after Defendants stopped selling Bee-Quick, they decided to sell a similar product called Natural Honey Harvester and use a similar advertising copy to sell that product. Reading Plaintiff's Complaint to raise the strongest arguments it suggests, it seems that Plaintiff's assertion is that consumers would buy Natural Honey Harvester thinking it was actually Bee-Quick. (*See* Compl. ¶ 30 ("The misused intellectual property was used to confuse customers, create initial interest confusion, build Defendants' brand, and steal sales from Plaintiff via bait-and-switch, misusing Plaintiff's good will, sterling reputation, and even his family surname.")). This issue was raised in *Fischer I*, just as it is raised here.

### (2)    Issues Actually Litigated and Decided in Prior Proceeding

The second collateral estoppel factor, whether these issues were actually litigated and decided, is also satisfied here. Plaintiff raised all of these issues in *Fischer I* and they were each decided in Judge Engelmayer's and Judge Peck's decisions. *See Fischer I*, 286 F. Supp. 3d at 598–599 (discussing the breakdown in the Fischer—Brushy Mountain relationship and subsequent accusations of infringement). As to the crux of the Complaint—whether Defendants' advertising

26

copy for Natural Honey Harvester infringed on Plaintiff's alleged copyright on the Four

Phrases—Judge Peck and Judge Engelmayer previously decided this issue in **Plaintiff's favor**. *Id.*

at 603–604 ("That meant that Brushy [Mountain] had infringed Fischer's copyright in both

December 2010 and January 2011."). But Judge Engelmayer held that Plaintiff could not

recovery statutory damages for the infringement because Plaintiff did not seek copyright on the

Four Phrases until after Brushy Mountain was already using the allegedly infringing advertising

copy.[18] *Id.* at 603–04. In his objection to Judge Peck's Report & Recommendation, Plaintiff then

attempted to change his legal and factual theory to support an argument that Brushy Mountain

didn't actually infringe on his copyright until *after* Plaintiff received copyright registration for

the Four Phrases.[19] *Id.* at 604–05. But Judge Engelmayer held that "permitting [Plaintiff] to

reconceive and effectively to restart this case at this late stage—after discovery, full briefing on

summary judgment before a magistrate judge, and the rendering of a detailed and thoughtful

opinion on the plaintiff's claims as brought—would waste substantial judicial resources . . . ."*Id.*

at 605. The same reasoning applies here. In any event, the *issue*—whether Defendants may

have infringed on Plaintiff's Four Phrases, was actually decided in *Fischer I*.

---

[18] As Judge Engelmayer explained, "[c]ourts in this district have held that Section 412 of the Copyright Act imposes a bright-line rule that precludes recovery of statutory damages and attorneys' fees where the first act of infringement in a series of ongoing infringements occurred prior to the work's copyright registration." *Fischer I*, 286 F. Supp. 3d at 602 (quoting *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 16-CV-724 (LTS), 2016 WL 4126542, at *2 (S.D.N.Y. Aug. 2, 2016).

[19] Plaintiff argued in his objections that Brushy Mountain did not infringe in 2011; instead, Brushy Mountain's license to use his intellectual property was rescinded in 2012, meaning that he could recover statutory damages since the "first" infringing act would have occurred *after* Plaintiff registered his copyrights. *See Fischer I*, 286 F. Supp. 3d at 604.

### (3)     Full and Fair Opportunity To Litigate the Issues

The third collateral estoppel factor, whether there was a full and fair opportunity to litigate the issues in *Fischer I*, is also satisfied. Plaintiff filed two separate actions, each with four complaints, for a total of eight complaints, and had counsel when he filed his final complaints in each of the two previous actions. *See id.* at 600. Over the course of the *Fischer I* litigation, Judge Engelmayer denied defendants Stephen and Sandra Forrest's motions to dismiss Plaintiff's first complaints, granted and denied in part additional motions to dismiss by defendants, and then, after Plaintiff retained counsel and completed discovery, granted defendants' motions for summary judgment over Plaintiff's objections to Judge Peck's Report & Recommendation. *See id.*

Plaintiff argues that because he alleges continued acts by the Defendants through 2017, these issues could not have been previously decided because his injury was "not yet present." (Pl.s' Mem. of Law at 2, ECF 43 (citing *Boggs v. Cleveland*, 655 F.3d 516 (6th Cir. 2011)). But Plaintiff's Complaint does not raise any new issues or injuries that were not considered by Judges Engelmayer and Peck in the *Fischer I* litigation. The acts that he claims continued past the filing of the *Fischer I* TAC are nothing new; at best, Plaintiff alleges that Defendants continued certain acts from 2014 to 2017 that were previously found **not** to be a basis of liability from 2012 to 2014. Specifically, his only factual allegations relate to the website and print advertising for Natural Honey Harvester. Tellingly, Plaintiff pleads Defendants' marketing of Natural Honey Harvester as a continuing course of conduct of "a knock-off of Plaintiffs product from 2012 to 2017." (Compl. ¶ 4).

28

### (4)  Necessity of Resolution of the Issues

As to the final collateral estoppel factor, resolution of the issues was necessary to support a final judgment because, without it, the *Fischer I* court could not grant summary judgment in defendants' favor. These issues include Defendants' use of the Four Phrases, *see Fischer I*, 286 F. Supp. 3d at 601–03, Defendants' alleged removal of CMI in violation of the DMCA, *see id.* at 608–09, and potential confusion of the Bee-Quick and Natural Honey Harvester marks, *see id* at 612–13.

### 3.  Failure to State a Claim

Defendants raise additional arguments in their Memorandum of Law, arguing that even if *res judicata* and collateral estoppel are insufficient to dispose of Plaintiff's claims in their entirety, certain of Plaintiff's claims fail to state a claim because they are not facially plausible as required by *Iqbal*. (Defs.' Mem. of Law at 17–26). For the reasons that follow, the Court agrees.

### a)  Plaintiff's Claims Against the New Defendants

As alleged in Plaintiff's Complaint, Defendants Scott Dickes, Richard Brock, Hadley Capital, BMBF, and Garden Trends did not have any involvement with Brushy Mountain until September 2014. (Compl. ¶¶ 10–14; *see, e.g.*, *id.* ("Hadley purchased Brushy in September 2014.")). Plaintiff pleads no facts in his Complaint alleging that these Defendants took any actions that are related to the causes of action in the Complaint or the injuries he claims. Besides conclusory allegations that copyright infringement occurred through 2017 and assertions that certain corporate defendants are "puppets" or "alter-ego[s]," (*Id.* ¶¶ 13–14),

Plaintiff had not pleaded any facts related to, or acts taken by, these Defendants. Additionally, Plaintiff's allegations of conduct that occurred in 2011 are not plausibly related to any actions taken by these Defendants. For those reasons, even if one could read Plaintiff's allegations to suggest that the New Defendants are not in privity, Plaintiff's claims against Defendants Scott Dickes, Richard Brock, Hadley Capital, BMBF, and Garden Trends should be **dismissed** for failure to state a claim upon which relief can be granted.

### b) Plaintiff's 360-*l* Claim

Plaintiff's 14th claim is that Defendants violated New York General Business Law § 360-*l*, which is New York's anti-dilution statute. (Compl. ¶¶ 135–140). To succeed on a claim under this statute, a plaintiff "must prove (1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *U–Neek v. Wal–Mart Stores, Inc.*, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001); *see Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 437 (S.D.N.Y. 2002) ("[T]o merit protection under the New York dilution statute, a plaintiff cannot simply show that she possesses trademark rights; rather, she must possess a trademark or name which is 'truly of distinctive quality' or which has 'acquired a secondary meaning in the mind of the public.'"); *Welch Allyn Inc. v. Tyco Int'l Servs.*, 200 F. Supp. 2d 130, 150 (N.D.N.Y.2002) ("only extremely strong marks" entitled to protection).

Interpreting Plaintiff's allegations to raise the strongest claims they suggest, Plaintiff apparently pleads that Defendants' use of the name "Natural Honey Harvester" "is likely to confuse and deceive consumers as to [Plaintiff's] sponsorship or approval of Defendants'

products by creating the false and misleading impression that Defendants' products are authorized, licensed or otherwise associated with Plaintiff." (Compl. ¶ 137). This is Plaintiff's sole factual allegation relating to this claim. (*See id.* ¶¶ 135–140). Plaintiff's argument is based on "blurring" under § 360-*l*. "Blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *New York Stock Exch., Inc. v. New York, New York Hotel LLC,* 293 F.3d 550, 558 (2d Cir. 2002). Courts look to six factors to determine blurring, "including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." *Id.*

Here, the analysis is quite simple. First, Plaintiff never alleged that Defendants used or modified his mark, Bee-Quick, to identify their competing product, Natural Honey Harvester. Second, the two marks at issue are not similar at all. Plaintiff's mark is "Bee-Quick." Defendants' alleged mark is "Natural Honey Harvester." The two marks do not use the same words or have anything similar in their wording. Further, Plaintiff has not alleged any facts showing consumer confusion. And Plaintiff's mark is *only* for the words themselves, not for any particular "font, style, size, or color." (Compl. Ex. 2). Finally, the two products may be similar or perform the same function, but this is not enough, by itself, to support an allegation of blurring. *See New York Stock Exch., Inc.* 293 F.3d at 558. For these reasons, Plaintiff's § 360-*l* claim fails as a matter of law and should be dismissed.

III.    **Conclusion**

The Court has considered all of the arguments raised by the parties. For the reasons discussed above, I respectfully recommend that Defendants' Motion to Dismiss be **GRANTED**.

IV.    **Objections**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (including weekends and holidays) from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Paul A. Engelmayer, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Engelmayer.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983)).

Respectfully submitted,

_s/ Ona T. Wang_

Dated: February 26, 2019                                      **Ona T. Wang**
       New York, New York                                  United States Magistrate Judge