UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES H. FISCHER,

Plaintiff,

-v-

BRUSHY MOUNTAIN BEE FARM, INC., ET AL.,

Defendants.

---

17 Civ. 10094 (PAE)

<u>OPINION & ORDER</u>

**PAUL A. ENGELMAYER, District Judge:**

Plaintiff James H. Fischer ("Fischer"), proceeding *pro se*, here claims copyright infringement, trademark infringement, and violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, *et seq.*, and brings New York state-law claims against Brushy Mountain Bee Farm, Inc ("Brushy Mountain") and related individuals and corporate entities. *See generally* Dkt. 1 ("Compl."). This is the latest in a series of similar actions Fischer has filed in this District against some of the defendants in this case. These include two related cases in which this Court dismissed Fischer's claims years ago—judgments affirmed by the Second Circuit on Fischer's appeal. *See Fischer v. Forrest*, No. 14 Civ. 1304 (S.D.N.Y. filed Feb. 27, 2014) and *Fischer v. Forrest*, No. 14 Civ. 1307 (S.D.N.Y. filed Feb. 27, 2014) (collectively, "*Fischer I*"); *see also Fischer v. Forrest*, 286 F. Supp. 3d 590, 596 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020).[1]

On March 9, 2018, the Court referred this case to the Hon. Ona T. Wang, Magistrate Judge, for general pretrial management. Dkt. 10. On April 27, 2018, defendants filed a letter in

---

[1] Those two earlier actions were litigated in tandem. For ease of reference, this decision will refer to docket entries from *Fischer I*, No. 14 Civ. 1304.

anticipation of a motion to dismiss, Dkt. 31, and this Court referred that motion to Judge Wang

for a Report and Recommendation, Dkt. 33.  On May 2, 2018, defendants filed the motion to

dismiss.  Dkt. 38.  On May 21, 2018, Fischer filed an opposition, Dkt. 43, and on May 29, 2018,

defendants responded, Dkt. 44.

On February 26, 2019, Judge Wang issued a Report and Recommendation.  It

recommends that the Court grant defendants' motion to dismiss on the grounds that the doctrines

of claim preclusion and issue preclusion each bar plaintiffs' claims in their entirety.  In the

alternative, as to certain claims, it recommends that these be dismissed under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. 49 (the "Report") at 19–32.  Fischer

timely objected, *see* Dkts. 52, 54, and defendants timely responded, *see* Dkt. 53.  But, with the

Second Circuit's decision in *Fischer I* pending, the Court stayed the case in response to the

parties' requests to do so in deference to ongoing settlement discussions.  *See* Dkts. 51, 57.

On June 1, 2023, with the Circuit having affirmed *Fischer I* and the parties having failed

to resolve the case, the Court ordered the parties to file a joint status update including their views

on the implications for this action of the affirmance in *Fischer I*.  *See* Dkt. 60 (citing *Fischer*,

968 F.3d 216).  On June 20, 2023, the parties filed that letter.  Dkt. 63.

For the following reasons, the Court adopts the Report in full as to its analysis that the

claims here are barred by preclusion analysis, but does not reach the Report's alternative finding

that issue preclusion also completely bars all claims.  The Court thus dismisses Fischer's claims

in their entirety and denies leave to amend.

## I.        Background

The Court adopts the Report's detailed account of the case's factual background and procedural history, to which no party objects. The following summary captures the limited facts necessary to assess the issues presented.

### A. Fischer's and Brushy Mountain's Honey-Harvesting Businesses

Fischer is the inventor of "Bee-Quick®," a product used to help beekeepers harvest honey, and which is an alternative to using toxic and foul-smelling butyric anhydride. Compl. ¶ 23. In 1999, Fischer began using the "Bee-Quick" mark in commerce and, on December 11, 2001, registered the mark with the U.S. Trademark Office. *Id.* ¶¶ 35–36. Fischer also used the following four phrases, among others, in conjunction with the sale of Bee-Quick on his website and in other advertisements:

1. "Are you tired of your spouse making you sleep in the garage after using Butyric Anhydride?"
2. "Are you tired of using hazardous products on the bees you love?"
3. "Fischer's Bee-Quick is a safe, gentle, and pleasant way to harvest your honey."
4. "A Natural, Non-Toxic Blend of Oils and Herbal Extracts."

*Id.* ¶¶ 46–48.

Defendant Brushy Mountain is a company based in North Carolina selling beekeeping products via catalog and its website. *Id.* ¶¶ 27–29. Brushy Mountain sold Fischer's Bee-Quick from 2002 through at least early 2011, as, Fischer maintains, an "Authorized Dealer." *Id.* ¶ 28. Defendants Stephen T. Forrest, Jr., Sandra F. Forrest (collectively, the "Forrests"), and Shane R Gebauer ("Gebauer") were, respectively, president, secretary/treasurer, and general manager of Brushy Mountain until September 2014; Stephen and Sandra Forrest were principal shareholders of Brushy Mountain during that time. *Id.* ¶¶ 7–9. Fischer alleges that Gebauer was an undisclosed 15% shareholder until he became president in September 2014. *Id.* ¶ 9.

Beginning in 2002, Brushy Mountain used the following language, or language similar to it, to promote Bee-Quick:

> Fischer's Bee Quick™. This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and Honey Robber® and it smells good! Fischer's Bee Quick™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go® or Honey Robber®? Are you tired of using a hazardous product on the bees you love? Then this is the product for you!

*Id.* ¶ 53; *see also id.*, Ex. 6. Fischer authorized Brushy Mountain to use this advertising text and images he sent them for their print catalog and website. *Id.* ¶ 51.

In December 2010, Brushy Mountain emailed Fischer informing him it would no longer carry Bee-Quick. *Id.* ¶ 59. Brushy Mountain allegedly then stopped selling Bee-Quick to customers in February 2011. *Id.* ¶ 28. Fischer states that, in March 2011, he saw Brushy Mountain's 2011 catalog, which advertised a product called "Natural Honey Harvester" using the following text:

> For years we have promoted the use of a natural product to harvest honey but an unreliable supply of such a product has forced us to come out with our own. This 100% Natural, non-toxic blend of oils and herb extracts works just like Bee Go® and it smells good! Natural Honey Harvester™ is a safe, gentle, and pleasant way to harvest your honey. Are you tired of your spouse making you sleep in the garage after using Bee Go®? Are you tired of using hazardous products on the bees you love? Then this is the product for you!

*Id.* ¶ 63. This text also appeared on Brushy Mountain's website in 2011. *Id.*

In April 2011, Fischer sent a cease-and-desist letter to Brushy Mountain, directing it to refrain from any "further use" of his intellectual property, which Fischer claimed had been misappropriated in the Natural Honey Harvester advertisements. *Id.* ¶¶ 63, 65. Fischer alleges that Brushy Mountain "sent a non-responsive reply" to this letter and continued to use the same advertising text in its "2012 catalog and website, and in subsequent years after." *Id.* ¶¶ 66–68.

4

Defendant Hadley Capital LLC ("Hadley Capital"), an Illinois-based company, purchased Brushy Mountain in September 2014. *Id.* ¶ 12.  Fischer alleges that Defendant BMBF Holdings, Inc. ("BMBF") is a "Delaware shell" for Hadley Capital; that defendant Garden Trends, Inc. ("Garden Trends") is a member of Hadley Capital's "family of companies," and owns 10% of BMBF which, Fischer contends, counts toward Hadley Capital's ownership of the same; that defendant Scott B. Dickes ("Dickes") was Brushy Mountain's "undisclosed Secretary/Treasurer" until September 2014 when "he (and/or his father)" became the new majority owner of Brushy Mountain; and that defendant Richard Clayton Brock ("Brock") has been Brushy Mountain's undisclosed Vice President since September 2014 and, through connections to Hadley Capital, is an owner of Brushy Mountain. *Id.* ¶¶ 10–15.  Fischer's complaint and other filings are vague as to the role that each defendant ostensibly played in operating Brushy Mountain and in the company's allegedly actionable conduct.

### B.  February 2014 Through April 2016: Early Events in *Fischer I*

On February 27, 2014, Fischer filed two lawsuits in this District:  *Fischer v. Forrest*, No. 14 Civ. 1304 (S.D.N.Y. Feb. 27, 2014) and *Fischer v. Forrest*, No. 14 Civ. 1307 (S.D.N.Y. Feb. 27, 2014).  These cases—later designated as related to this one—were litigated in tandem. *Fischer I*, 286 F. Supp. 3d at 596 n.2.  There, Fischer initially brought federal claims against the Forrests (who are among the defendants in this action) under the Copyright Act, 17 U.S.C. § 101, *et seq.*, the DMCA, 17 U.S.C. § 1201 *et seq*, and the Lanham Act, 15 U.S.C. § 1051, *et seq*, and a New York state-law claim for unfair competition.  Fischer's central allegation was that the Forrests had "used his likeness and proprietary text and images to promote their own competing knock-off version of his product, Bee-Quick[.]"  *Fischer I*, 286 F. Supp. 2d at 596.

On February 3, 2015, Fischer filed second amended complaints in both actions adding Gebauer (also a defendant in this action) as a defendant. *Fischer I*, Dkt. 50. On December 28, 2015, Fischer, then counseled, filed a Third Amended Complaint (the "TAC") adding Brushy Mountain (also a defendant here) as a defendant. *Fischer I*, 286 F. Supp. 3d at 600.

On April 18, 2016, all defendants in *Fischer I* (*i.e.*, the Forrests, Gebauer, and Brushy Mountain) filed motions to dismiss certain claims in the TAC. *Fischer I*, Dkts. 102, 105, 108. They argued that Fischer's copyright claims were untimely as against Brushy Mountain and Gebauer, that Fischer had not plausibly alleged a trademark counterfeiting claim—his only theory of trademark liability in *Fischer I*—as the "Natural Honey Harvester" they sold after discontinuing Fischer's product was distinguishable from the Bee-Quick mark, and that Fischer's right of publicity claim under New York law was untimely. *See, e.g.*, *Fischer I*, Dkt. 103 at 4–10; *Fischer I*, Dkt. 106 at 4–8; *Fischer I*, Dkt. 109 at 3–6. On January 13, 2017, the Hon. Andrew J. Peck, Magistrate Judge, issued a Report and Recommendation finding that some of Fischer's copyright claims against Brushy Mountain were untimely, that Fischer's trademark counterfeiting claims failed to state a claim, and that Fischer's New York right of publicity claim was untimely. *Fischer I*, Dkt. 132 at 34. This Court adopted the Report and Recommendation in its entirety. *Fischer I*, Dkt. 153 at 12.

On April 19, 2017, after discovery, the defendants in *Fischer I* moved for summary judgment on the remaining claims. These were (1) under the Copyright Act, (2) under the DMCA for removal of copyright management information or "CMI," (3) false endorsement and false advertising claims under the Lanham Act, and (4) unfair competition, unfair business practices, unjust enrichment, and breach of contract claims under New York state law. *Fischer I*, Dkt. 170. On July 14, 2017, Judge Peck issued a Report and Recommendation recommending

granting the motions in their entirety. *See Fischer v. Forrest*, No. 14 Civ. 1304 (PAE) (AJP), 2017 WL 2992663, at *1 (S.D.N.Y. July 14, 2017).

As to the copyright claims, the Report noted that Fischer had elected to pursue statutory (not actual) damages, but that such damages are unavailable where "any infringement of copyright in an unpublished work commenced before the effective date of its registration[.]" *Id.* at *11. Because defendants' first alleged infringing act had predated the effective date of Fischer's copyright registration, statutory damages were unavailable. *Id.* at *12–13. And although Fischer had also pursued injunctive relief, that claim, the Report found, was moot, given defendants' representation that they would cease the alleged infringing conduct. *Id.* at *15–16. Thus, with no relief to be had, the Report recommended entry of summary judgment for defendants on the copyright claims. *See id.* As to the DMCA claims based on CMI removal, the Report noted that Fischer had not established that any of his work (whether visuals or advertising text) contained any CMI, and rejected Fischer's claim that his name qualified as CMI. *Id.* at *16–19. As to the Lanham Act false endorsement and New York law unfair competition claims, the Report found that Fischer had not adduced evidence supporting that defendants' business practices, including using website links that included Fischer's name, had created a likelihood of confusion among consumers. *Id.* at *20–25. As to the Lanham Act unfair competition claim, the Report found it, too, unsupported by admissible evidence. *Id.* at *26–28. Finally, the Report noted, Fischer, in briefing on summary judgment and at argument, had withdrawn his remaining state law claims, which required proof of actual damages, which had not been adduced. *Id.* at *28. Fischer filed timely objections to the Report's various recommendations.

**C. December 2017: Fischer Files This Action**

On December 22, 2017, while his objections to the Report in *Fischer I* were pending before this Court, Fischer filed the present action, *pro se*. He brings 16 claims, including six for copyright infringement, three under the DMCA, one for trademark infringement, one for false designation of origin and unfair competition, one for federal trademark counterfeiting, and four under New York State law. *See* Compl. ¶¶ 74–153. The complaint in this action is based upon similar facts as those alleged in *Fischer I*, but it also pursues some additional or differing legal theories—including that Fischer now elects actual damages on his Copyright Act claims. *See, e.g., id.* ¶ 86. It also alleges violations that now extend from 2012 through the 2017 filing date of the new complaint. *See* Report at 9–10 (documenting overlap and differences between the claims here and in *Fischer I*). Fischer also named—in addition to the defendants in *Fischer I*—Hadley Capital (and affiliates) as defendants, a move as to which, in *Fischer I*, Judge Peck had denied leave to amend. *Fischer I*, Dkt. 86.

**D. February 2018: Adoption of the Report in *Fischer I***

On February 16, 2018, this Court adopted Judge Peck's Report in *Fischer I* in its entirety, granting summary judgment for the defendants on all remaining claims and closing the two cases. On March 16, 2018, Fischer moved for reconsideration, *Fischer I*, Dkt. 202; on August 29, 2018, the Court denied this motion. *Fischer I*, Dkt. 224. On October 2, 2018, Fischer filed a notice of appeal in *Fischer I*. *Fischer I*, Dkt. 230.

**E.     May 2018 through February 2019: The Motion to Dismiss in This Action**

On May 2, 2018, all defendants in this action filed the pending motion to dismiss. Dkt. 38. Briefing was complete in May 2018. Dkts. 43, 44, 46.

On February 26, 2019, Judge Wang issued the Report on that motion, recommending that it be granted in its entirety. On April 30, 2019, after an extension, Fischer timely filed objections

to the Report.  Dkt. 52 ("Pl. Obj.").  On May 10, 2019, defendants filed a response.  Dkt. 53.

("Def. Resp.").

**F.      August 2020 to Today: The Affirmance in *Fischer I* and Status Report Here**

On August 4, 2020, the Second Circuit affirmed this Court's entry of summary judgment

for the defense in *Fischer I*.  *Fischer*, 968 F.3d at 224.  The Circuit agreed that statutory damages

were unavailable on Fischer's copyright claims, *id.* at 220–22, and that Fischer's name, as used

in connection with the copyrighted works at issue, did not constitute CMI within the meaning of

the DMCA.  *Id.* at 222–24.

Following a period in which the parties attempted to settle this case, this Court invited a

joint status report, both as to the prospects for settlement and the impact of the affirmance in

*Fischer I* on the pending motion to dismiss as evaluated in Judge Wang's Report.  Dkt. 60.  On

June 20, 2023, the parties submitted that joint status report.  Dkt. 63.

**II.     Applicable Legal Standards**

**A.  Report and Recommendation**

In reviewing a Report and Recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C).  When specific objections are timely made, "[t]he district judge must

determine *de novo* any part of the magistrate judge's disposition that has been properly objected

to."  Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.

1997).  "To accept those portions of the report to which no timely objection has been made, a

district court need only satisfy itself that there is no clear error on the face of the record."  *Ruiz v.*

*Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19,

2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y.

9

July 8, 2009)); *see also, e.g., Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

If a party objecting to a Report and Recommendation makes only conclusory or general objections, or simply reiterates its original arguments, the Court will review the Report strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). This is so even in the case of a *pro se* plaintiff. *Telfair v. Le Pain Quotidien U.S.*, No. 16 Civ. 5424 (PAE), 2017 WL 1405754, at *1 (S.D.N.Y. Apr. 18, 2017) (citing *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). Furthermore, "[c]ourts do not generally consider new evidence raised in objections to a magistrate judge's report and recommendation," *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

**B. Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[ ] all inferences in the plaintiff's favor.'" *Brown v. Kay*, No. 11 Civ. 7304 (PAE), 2012 WL 408263, at *7 (S.D.N.Y. Feb. 9, 2012) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."). Despite the rule in this circuit that *pro se* complaints are to be liberally construed and interpreted to raise "the strongest arguments they

suggest," *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006), in order

to survive a motion to dismiss, a *pro se* plaintiff must plead enough facts to state a claim to relief

that is plausible on its face. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). A claim will

only have "facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft

v. Iqbal*, 556 U.S. 662, 664 (2009).

## III.   Claim Preclusion

The Report's first and central conclusion is that Fischer's complaint is barred in its

entirety by the doctrine of claim preclusion. *See* Report at 19–24.

### A.  Applicable Legal Principles

Claim preclusion, or *res judicata*, bars a plaintiff from relitigating claims that "were or

could have been raised in a prior action against the same defendant[s] [or their privies] where

that action has reached a final judgment on the merits." *L-Tec Elecs. Corp. v. Cougar Elec.

Org., Inc.*, 198 F.3d 85, 87–88 (2d Cir. 1999). "Whether or not the first judgment will have

preclusive effect depends in part on whether the same transaction or series of transactions is at

issue, whether the same evidence is needed to support both claims, and whether the facts

essential to the second were present in the first." *NLRB v. United Techs. Corp.*, 706 F.2d 1254,

1260 (2d Cir. 1983) (citations omitted).

"To prove the affirmative defense [of *res judicata*] a party must show that (1) the

previous action involved an adjudication on the merits; (2) the previous action involved the

plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action

were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214

F.3d 275, 285 (2d Cir. 2000). A district court may consider the affirmative defense of *res*

*judicata* on a Rule 12(b)(6) motion where all relevant facts are shown in the plaintiff's complaints, attachments thereto, and in the court's own records, which are appropriate for judicial notice. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

**B. Discussion**

In finding all elements of claim preclusion, the Report reasoned as follows.

First, it found, *Fischer I* had concluded in a final judgment on the merits. Report at 20.

Second, it found, the *Fischer I* parties are in privity with the parties in the current action. *Id.* at 20–21. Numerous parties are the same (sole plaintiff Fischer and defendants the Forrests, Gebauer, and Brushy Mountain). And Fischer's Complaint itself established that "the new defendant[s] have a sufficiently close relation to the original defendant to justify preclusion." *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (cited in Report at 20–21). As the Report noted, the Complaint based Fischer's case against Hadley Capital and related defendants on the fact that, after 2014, they owned, managed, or exercised control over Brushy Mountain. *See* Compl. ¶¶ 9–15.

Third, the Report found, the claims in this action either were or could have been brought in *Fischer I*. The Report noted that Fischer's complaint here is an "almost *verbatim* recitation of the facts from the *Fischer I* TAC," alleging the "same core acts and injuries arising from Defendants' print and online sales advertising[.]" Report at 22. And although Fischer's legal theories had evolved between the two complaints—for example, pursuing actual rather than statutory copyright damages—the Report noted that *res judicata*'s third element asks not whether the complaints or legal theories were identical, *id.* at 22, 24–25, but whether the claims in the subsequent action were or *could have been* brought in the earlier one. The Report found that Fischer's Complaint here was comprised entirely of claims that had actually been brought in

*Fischer I* or were based on "'the same series of facts and events as the claims brought' in *Fischer I*" such that they, too, could have been brought there.  Report at 25 (quoting *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 225 (S.D.N.Y. 2010)).

Fischer makes several objections aimed at this conclusion.

### 1.  Presence of New Defendants

Read liberally, Fischer's objections can be understood to argue that claim preclusion cannot apply with respect to the defendants who were not named in *Fischer I*, on the ground that claims against new defendants are necessarily new claims.  *See* Pl. Obj. at 2, 4.  That is wrong.  As the Report recognized, defendants BMBF, Hadley Capital, Scott Dickes, Richard Brock, and Garden Trends were not sued in *Fischer I*.  *See, e.g.*, Report at 20.  But claim preclusion does not require all parties to the successive actions to be identical.  It requires instead the party in question to have been in privity with a party to the earlier case.  *See, e.g., Alpert's Newspaper Deliver, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) (privity existed for *res judicata* purposes where "mastermind" and funder of both litigations was the same, even though not named in either action).  Where the new parties are in privity with the old, the presence of new names on one side of the "v." does not factor into the *res judicata* analysis.  *See id*; *cf. N. Assur. Co. of Am. v. Square D. Co.*, 201 F.3d 84, 88 (2d Cir. 2000) (plaintiff not barred by claim preclusion in bringing claim against a different defendant than in previous action because the old and new defendants were "joint tortfeasors," not entities "in privity").

Notably, Fischer does not object to the Report's finding of privity between the *Fischer I* defendants and those newly named here.  Report at 20–21.  And Fischer could not credibly do so, insofar as his Complaint itself alleges that the new defendants are intimately involved with, and in some instances the true managers of, Brushy Mountain and other original defendants.  *See*

Compl. ¶¶ 11–19.  The Report's unobjected-to finding of privity was not clear error; on the contrary, viewed *de novo*, it was clearly correct.  Fischer's objection based on the presence of new defendants thus does not defeat the finding on claim preclusion.

### 2.  Impact of Denial of Leave to Amend in *Fischer I*

Fischer next argues that the "new" claims cannot be barred because, in *Fischer I*, Magistrate Judge Peck, then supervising the case, denied him leave to amend his complaint to, purportedly, bring claims based on new legal theories against new defendants (those added here). Pl. Obj. at 5.  He notes that, at the time, Judge Peck stated that he did not "think denial of the motion to amend would preclude [Fischer] from bringing a new action against new parties . . . but counsel may want to think about that."  *Fischer I*, Dkt. 231 at 8.  Given this background, Fischer argues, it would be unfair to bar him from adding new defendants and claims based on claim preclusion.  Pl. Obj. at 5.

Fischer's objections are misplaced, however, for several reasons.

At the threshold, Fischer's factual claim to have been barred in *Fischer I* from pursuing claims against new defendants based on new facts or legal theories is incorrect.  *See* Pl. Obj. at 5 ("Plaintiff was also not able to join new defendants for their subsequent distinct legal violations stemming from different facts.").  Fischer relies on a December 18, 2015 conference whose outcome was reflected in an order denying in part Fischer's motion for leave to file a proposed Third Amended Complaint, or TAC.  *See Fischer I*, Dkts. 86 (Order), 222 (transcript of December 18, 2015 Hearing).[2]  Judge Peck there permitted Fischer to add Brushy Mountain as a defendant, *see Fischer I*, Dkt. 86 at 2, while denying leave to file the TAC.  But the TAC sought

---

[2] As Fischer himself here notes, Judge Peck granted his motion to amend his complaint to the extent it sought to add Brushy Mountain as a defendant.

only to add new defendants. It did not make any changes of substance to the preceding complaint's factual allegations or legal theories. *See generally Fischer I*, Dkt. 103, Ex. 1 (proposed TAC). The little the TAC proposed to add would have accused defendants of continuing the existing manner of infringement further in time than previously alleged. It stated: "Since taking control over the operation and management of Brushy in September 2014 Hadley Capital LLC has continued in the infringing and wrongful activities described [in the existing complaint]." *Id.* ¶ 78. Fischer thus cannot cast the denial of leave to amend as having barred him from raising substantively new claims or facts, as his TAC did not propose to do either. Fischer's claim to this effect is doubly factually wrong with respect to new defendant Hadley Capital LLC ("Hadley"). The *Fischer I* record reflects that Fischer withdrew his request to add Hadley as a party before Judge Peck denied the request to permit the filing of the TAC; Fischer's counsel stated at the conference that he would "renew [the request] if necessary if discovery calls for it." Dkt. 53, Ex. 1 ("12/18/15 Tr.") at 13. Judge Peck's order thus did not deny a request by Fischer to add Hadley as a defendant.[3]

In any event, Fischer's objection fails because the determination in *Fischer I* whether to grant or deny leave to amend does not bear on whether claim preclusion bars Fischer's claims here. As the Second Circuit has explained: "[W]hen a plaintiff's motion to amend the complaint is denied and the plaintiff subsequently brings the amendments as a separate lawsuit . . . 'the actual decision denying leave to amend is irrelevant to claim preclusion analysis.'" *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (quoting *N. Assur. Co.,* 201 F.3d at 88).

---

[3] Judge Peck separately expressed doubt that, had Fischer maintained his request to add claims against Hadley, the proposed claims would have stated a claim. He noted that the TAC appeared bereft of factual allegations as to Hadley's relationship to Brushy Mountain and did not adequately allege Hadley's liability on an "alter ego" theory. *See* 12/18/15 Tr. 15.

"Regardless of whether a plaintiff attempts to bring the additional claims in an initial suit, and regardless of whether plaintiff meets with success in that attempt, the *res judicata* bar 'is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event.'" *Robinson v. Purcell Const. Corp.*, 647 Fed. App'x 29, 30 (2d Cir. 2016) (quoting *N. Assur. Co.*, 201 F.3d at 88). Either way, the claim preclusion inquiry applies "the normal rule barring claims that should have been brought, regardless of whether the plaintiff [sought] to add them to the initial suit." *N. Assur. Co.*, 201 F.3d at 88. Fischer's premise, that the denial of leave to amend (for the third time) in *Fischer I* means that he is permitted to bring his proposed amended complaint in this lawsuit, misapprehends claim preclusion doctrine.

This outcome is not changed by Judge Peck's statement that he believed that the denial of leave to amend would not bar Fischer from bringing claims against new defendants in a later suit. *See Fischer I*, Dkt. 231 at 8 ("I don't think the denial of the motion to amend would preclude the plaintiff from bringing a new action against new parties."). That offhand comment does not override claim preclusion doctrine. And Judge Peck's comment, on its face, did not purport to analyze the viability of a hypothetical new complaint as against a defense of claim preclusion. It merely commented, accurately, on the separate issue of the effect (or lack thereof) of the denial of leave to amend on Fischer's rights with respect to a new lawsuit.

Accordingly, the Report was correct not to treat the denial of leave to file the *Fischer I* TAC as part of the claim preclusion analysis here. Fischer's objections arguing the contrary fail.

## C.    Factual Allegations That Post-Date Final Amendment in *Fischer I*

Fischer's central objection is that his Complaint here brings claims based on facts which post-date the filing of *Fischer I* and thus could not have been brought in *Fischer I*. Pl. Obj. at 2–

16

3. These claims, he contends, are based on acts of infringement that commenced in late 2014 after Hadley Capital took over "day-to-day" control of the Brushy Mountain operation. *See id.* Specifically, he argues that he has alleged here (1) "new and different" copyright infringements after February 2014 in which new owners switched from "verbatim copying" of Fischer's work to "close paraphrasing," and (2) "new and different" trademark infringements after February 2014 in which, notwithstanding defendants' changes to their webpages, search engines continued to direct users to the earlier infringing versions of webpages, and users who had bookmarked those infringing pages continued to have access to them. *Id.*[4] Fischer's challenge on these grounds to the finding of claim preclusion is unavailing.

For claim preclusion to apply, it must be that "the claims asserted in the subsequent action were, *or could have been*, raised in the prior action." *Monahan*, 214 F.3d at 284–85 (emphasis added). In carrying out that inquiry, courts examine "whether the same transaction or connected series of transactions is at issue, [and] whether the same evidence is needed to support both claims." *National Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). That inquiry, however, is complicated in situations where the subsequent complaint is based on factual allegations that both pre- and post-date the operative complaint in the prior action.

Claims that "aris[e] subsequent to a prior action . . . are not barred by *res judicata*[.]" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003). This is so even if those claims are based on similar conduct to that on which the prior action was based, and indeed even

---

[4] In his initial objections, Fischer also argued that his complaint here contained new and distinct DMCA claims. Pl. Obj. at 3. However, in the parties' status report following the Second Circuit's affirmance of *Fischer I*, Fischer stated that he is no longer pursuing DMCA or trademark counterfeiting claims here. *See* Dkt. 63 at 4; Dkt. 59 at 1.

if they are "premised on facts presenting a continuance of the same 'course of conduct'" as that litigated in the prior action. *Id.* In such circumstances, however, to avoid claim preclusion, the alleged new conduct must have given rise to a new claim—one that was not only not brought, but could not have been brought, in the prior action. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499–500 (2d Cir. 2014).

As relevant here, the Second Circuit has held that claim preclusion does not necessarily apply where "a subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred both before and after the earlier action commenced" so long as the subsequent complaint is "based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts." *TechnoMarine SA*, 758 F.3d at 501 (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)). In other words, notwithstanding an ongoing course of conduct, where the facts alleged to have occurred after the first action are sufficient to support an independent cause of action, claim preclusion does not present an obstacle to that cause of action. *See Waldman*, 207 F.3d at 113.

Applying these principles here, the Report was clearly correct to find the facts that Fischer alleges to have occurred after his last amended complaint in *Fischer I* not to support new claims and hence to be insufficient to avoid claim preclusion.

To start, Fischer misstates the date relevant to assessing whether he could have brought the instant claims in *Fischer I*. That date is December 28, 2015, the date the third and final amended complaint was filed, *see Fischer I*, Dkt. 111, not February 27, 2014, the date the initial complaint was filed, *see Fischer I*, Dkt. 2. Claim preclusion applies only where "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285. Because Fischer filed, in *Fischer I*, three amended complaints, *Fischer I*, Dkts.

23, 50, 89, with the final and ultimately operative complaint coming in on December 28, 2015,

Dkt. 89, he, by definition, could have raised claims in *Fischer I* that arose before that date.

To be sure, a plaintiff is not required to file supplemental complaints to add later-arising

claims. The plaintiff may wait and sue on those later-arising claims in a separate action without

facing a claim preclusion bar. *See, e.g., S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450,

1464 (2d Cir. 1996) ("If a defendant engages in actionable conduct after a lawsuit is commenced,

the plaintiff may seek leave to file a supplemental pleading to assert a claim based on the

subsequent conduct. But he is not required to do so, and his election not to do so is not penalized

by application of res judicata to bar a later suit on that subsequent conduct." (citations omitted));

*Curtis*, 226 F.3d at 139 ("The plaintiff has no continuing obligation to file amendments to the

complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those

later-arising claims."). But where, as here, a plaintiff does file an amended complaint, the date

of the last of the complaints controls in the claim preclusion analysis. *See, e.g., Curtis*, 226 F.3d

at 226 (analyzing claim preclusion effect of previous action based on time of filing of first

amended complaint); *McCluskey v. Roberts*, No. 19 Civ 2386 (RRM) (ARL), 2020 WL 6449234,

at *5 (E.D.N.Y. Nov. 3, 2020), *aff'd*, No. 20-4018, 2022 WL 2046079 (2d Cir. June 7, 2022)

(same); *Kamdem-Ouaffo v. Balchem Corp.*, No. 19 Civ. 9943 (PMH), 2022 WL 1081994, at *4

(S.D.N.Y. Apr. 8, 2022) ("The complaint in this action does not contain any claims or factual

allegations that were not, or could not have been, included in the second amended complaint in

the Original Action."). That accords with the familiar principle that an amended complaint

supersedes in all respects the original complaint, rendering the latter a legal nullity. *Int'l

Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d. Cir. 1977) ("It is well established that an

amended complaint ordinarily supersedes the original and renders it of no legal effect."); 6 C.

Wright & A. Miller, Federal Practice & Procedure § 1476, at 556–57 (2d ed. 1990).  Fischer's

proposal to use the date of his original complaint in *Fischer I* as the barometer for the purposes

of claim preclusion analysis is thus incorrect.  The proper date to use is December 28, 2015.

With this date as a reference point, Fischer's objection that his present complaint brings

claims based on facts that were unavailable to him in *Fischer I* as of that date fails.[5]  The only

allegations that the complaint contains that concern the post-2015 period are threadbare

recitations that defendant's unlawful practices persisted through 2017.  *See* Compl. ¶ 29

("Defendants defied Plaintiff, using the formerly-licensed IP in their 2012 and subsequent print

catalogs and websites, even after suit was filed, through at least 2017."); *id.* ¶ 68 ("Use in

[Brushy Mountain's] 2012 catalog and website, and in subsequent years after recission and

explicit prohibition of any further use, was actual infringement of Plaintiff's rights"); *id.* ¶ 75

("This complaint is for the infringement of Plaintiff's exclusive rights to his original Work of

expression . . . from 2012 onward").  Fischer thus purports to allege an ongoing course of illegal

conduct continuing past the date he filed his TAC in *Fischer I*.  The complaint, however, is

devoid of specific factual allegations, which, taken as true, would establish distinct or new acts

of infringement post-2015; it instead contains only rote, generalized assertions that the infringing

practices extended from 2012 through "at least 2017."  *See id.* ¶ 29; *see also, e.g. Waldman*, 207

F.3d at 112–13 (claim preclusion applies where "it is simply not plausible to characterize [the

subsequent claim] as one based in any significant way upon the post-[first action] facts.");

*McCluskey*, 2020 WL 6449234, at *5 (where "essence of cause of action" was that "defendants

---

[5] To the extent Fischer's complaint can be read to raise new legal theories, such would not enable him to avoid claim preclusion.  *See L-Tec Elecs. Corp.*, 198 F.3d at 88 ("The new claims are based on different legal theories rather than different facts and, accordingly, could have been raised in the original complaint.").

[had] continued their [allegedly unlawful] practice . . . [t]hat cause of action is not based on legally significant acts which occurred in [2017] but complains of a longstanding practice. As such it does not constitute a 'new claim.'"). At bottom, Fischer's complaint here centers on conduct in 2011 and 2012. As such, it overwhelmingly mirrors the operative complaint in *Fischer I*, with scant references to post-*Fischer I* dates tacked on at points unaccompanied by concrete factual allegations. That does not supply a basis to defeat a claim preclusion defense.

Presumably given the absence of any specific allegations as to events in or after 2015, Fischer's objections to the Report's claim preclusion analysis center on earlier events. He asserts that "new and distinct" claims arose in late 2014. *See* Pl. Obj. at 2–3. With respect to his copyright claims, Fischer asserts that, after Hadley Capital and related defendants took over control of Brushy Mountain in late 2014, they began infringing "via 'close paraphrasing'" of Fischer's works, as opposed to the "verbatim copying" that occurred before. *Id.* And with respect to his trademark infringement claims, Fischer asserts that after *Fischer I* was filed in February 2014, defendants redirected users from infringing webpages but continued to publish the infringing webpages to search engines and to those who had previously bookmarked them. *See id.* at 3. Neither of these allegations nor anything close, however, appeared in Fischer's Complaint in this case. *See, e.g.*, Compl. ¶ 69 ("Far beyond mere similarity or derivation, the infringing misappropriations are word-for-word *verbatim* duplicates of the infringed copyrighted Works." (emphasis added)); *id.* ¶ 94–116 (detailing Fischer's trademark claims without making mention of redirecting users, search engines, or previous bookmarks). Nor did Fischer, in opposing the motion to dismiss, rely on such purported factual allegations. *See* Dkt. 43 at 1.

That is fatal to these objections. "New arguments and factual assertions cannot properly be raised for the first time in objection to the report and recommendation, and indeed may not be

deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774 (LAP) (KNF), 2014 WL 244071, at *5 (S.D.N.Y. May 30, 2014); *see also, e.g., Robinson v. Keane*, No. 92 Civ. 6090 (CSH), 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation."); *Abu–Nassar v. Elders Futures*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 n. 2 (S.D.N.Y. Aug. 17, 1994) ("These arguments were not raised before [the Magistrate Judge], and are not submitted as objections but as new arguments. Accordingly, the plaintiff's arguments and evidence are untimely. If the Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a report is issued to advance additional arguments.").

In any event, even were the Court to consider these objections on the merits, they fail, because the claims allegedly brought in the present Complaint equally could have been brought in *Fischer I.* The operative complaint there was filed on December 28, 2015. *Fischer I*, Dkt. 89. Yet his objections center on claims that allegedly arose by, at the latest, late 2014, Pl. Obj. at 2– 3, when they could have been brought in *Fischer I.*

Underscoring this point is Fischer's attempt in his TAC in *Fischer I*—though he later withdrew it—to add Hadley Capital as a defendant on his existing claims there. The thrust of those claims was that Hadley was perpetuating the same infringements as had its predecessor, Brushy Mountain. *See Fischer I*, Dkt. 103, Ex. 1. And, as noted, Fischer does not identify any new illegalities by Hadley, let alone ones that first arose after December 28, 2015. *See, e.g., Robinson,* 647 Fed. App'x at 30 (claim preclusion barred subsequent action even where plaintiff alleged she only came to find out about the factual basis for a subsequent claim through trial

testimony in the first action); *L-Tec Elecs. Corp.*, 198 F.3d at 88 (discovery of additional facts

following entry of summary judgment did not block application of *res judicata* bar).

In sum, Fischer's complaint in this action is all but identical to his operative complaint in

*Fischer I*, save for the addition of new defendants accused of continuing the same wrongs.  The

complaint does not allege facts post-dating the Third Amended Complaint in *Fischer I*, let alone

ones that could form the basis of a new claim.

The Court accordingly adopts the Report's claim preclusion analysis in full and rejects

Fischer's objections to this part of the Report.  The finding of claim preclusion bars all claims in

Fischer's complaint here.

### 3.  Issue Preclusion

The Report separately found that issue preclusion presented an independent bar to all of

Fischer's claims in this case.  It concluded that all issues raised by the instant complaint had been

raised, and actually and fully and fairly litigated in *Fischer I*.  Report at 26–28.

The Report's finding that the litigation in *Fischer I* has the capacity to be issue-preclusive

is undeniably correct as to some rulings in that case.  For example, as to Fischer's Copyright Act

claims, this Court, and the Second Circuit, resolved that statutory damages, which Fischer had

elected in *Fischer I*, were unavailable to Fischer as a matter of law.  *See Fischer I*, 286 F. Supp.

3d at 606; *Fischer I*, 968 F.3d at 220–22.  Had Fischer pursued such damages in this case, his bid

for such damages would be barred by issue preclusion, and, were he to seek no other remedy,

dismissal of his Copyright Act claims would be required.

However, here, Fischer has reframed his Copyright Act claims to pursue actual damages.

This Court in *Fischer I* did not resolve any dimension of those claims as now pled, including,

importantly, any element of the liability analysis.

In this context, where the sole basis for disposing of Fischer's Copyright Act claims in *Fischer I* was a remedy element absent from this case, it is by no means clear that *Fischer I* is issue-preclusive as to the copyright claims. And the application of issue-preclusion to Fischer's other claims (*e.g.*, under the DMCA, the Lanham Act, or state law) would likewise be complex. It would require a claim-by-claim and potentially element-specific analysis that the Report did not undertake. Because claim preclusion independently bars these claims here, the Court elects, too, not to undertake that analysis, as doing so is unnecessary.[6]

## V.    Leave to Amend

In his opposition to the motion to dismiss, Dkt. 43 at 7–8, and his objections to the Report, Pl. Obj. at 7–8, Fischer argues that if the motion to dismiss is granted, this Court should grant leave to amend. The Court construes these arguments as a motion for leave to amend, but denies this motion.

"Leave to amend should be freely give 'when justice so requires.'" *New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*, No. 20 Civ. 2327 (MKV), 2021 WL 930616, at *1 (S.D.N.Y. Mar. 11, 2021) (quoting Fed. R. Civ. P. 15(a)(2)). And, normally a "*pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up). However, "leave to amend may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).

---

[6] In the event of an appellate remand, the Court would then, if warranted, evaluate the Report's finding of across-the-board issue preclusion.

Granting leave to amend in this instance would be futile, and so the Court declines to further extend this protracted litigation.  Fischer does not identify any allegations that he would add to his complaint, let alone how these would rectify the deficiencies identified in the Report or herein.  *See* Pl. Obj. at 7–8; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to amend on basis of futility grounds where plaintiff had not identified new material to be pled); *TechnoMarine SA*, 758 F.3d at 505 (affirming denial of leave to amend on same basis).

Denying leave to amend is particularly appropriate here.  Fischer amended his complaint three times in *Fischer I*.  And his complaint in this follow-on lawsuit, as the Court has explained, in substance, is all but identical to that in in *Fischer I*.  It does not plead any facts indicative of new violations of law following the date of the last amended complaint in *Fischer I*.  Under these circumstances, there is no reason to assume, and Fischer has not supplied any, that yet a new complaint could survive claim preclusion.  Fischer's claims along these lines have been litigated for nearly a decade—since February 2014.  The interest in sparing defendants (and the courts) a new round of time-consuming litigation favors closure, and denial of leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of Court is respectfully directed to close the motion pending at Docket 38, to close this case, and to mail a copy of this decision to Fischer at the address on hand.[7]

---

[7] As mentioned above, the Court had previously stayed this action at the request of the parties, and the action appears to have remained stayed through the issuance of this decision.  Thus, as a formality, the Clerk of Court is respectfully directed to lift this stay insofar as necessary to close the motion pending at Docket 38.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 12, 2023
       New York, New York